**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WANDA CORDERO-SUAREZ,<br><br>    Plaintiff,<br><br>        v.<br><br>ORLANDO RODRIGUEZ, ET ALS.,<br><br>    Defendants. | CIV. NO. 09-1586 (PG) |

**OPINION AND ORDER**

Pending before the Court is defendants' motion for summary judgment (Docket No. 44). For the reasons set forth below, the Court **GRANTS** their request.

**I. BACKGROUND**

On June 26, 2009, plaintiff Wanda Cordero-Suarez ("Cordero" or "Plaintiff") filed the above-captioned claim pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Orlando Rodriguez ("Rodriguez"), District Manager for the Internal Revenue Division for the District of Mayagüez; Angel A. Ortiz Garcia ("Ortiz"), Former Secretary Treasury Department for the Commonwealth of Puerto Rico; Fabian Serrano ("Serrano"), Director of the Internal Revenue Division of the Treasury Department; Jose J. Fas Quinones ("Fas"), Deputy Secretary of Human Resources of the Treasury Department; Juan C. Puig ("Puig"), Secretary of the Treasury Department for the Commonwealth of Puerto Rico. See *Complaint*, Docket No. 1. The present action was filed against defendants Ortiz, Rodriguez, Serrano, and Fas in their official and personal capacity, and against defendant Puig in his official capacity.

According to Plaintiff, the defendants violated her constitutional rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiff thus requests in her complaint that defendants be enjoined from discriminating against her because of her political beliefs, and seeks compensatory damages for the persecution to which she has been allegedly subjected to by the defendants. In her pleadings, Plaintiff also included supplemental state law claims pursuant to Puerto Rico Law No. 100 of June 30, 1959 ("P.R. Law No. 100"), P.R. LAWS ANN. tit. 29, § 146 *et seq.* and Puerto Rico

CIV. NO. 09-1586 (PG)                                                    Page 2

Law No. 382 of May, 11, 1950 ("P.R. Law No. 382"), P.R. Laws Ann. tit. 29, § 137.

After careful review of the defendants' motion to dismiss filed in lieu of an answer to the complaint, the Court dismissed Cordero's claims for monetary damages against all defendants in their official capacity; the claims against co-defendants Ortiz and Puig; and her claims for sexual harassment, due process, equal protection, and her supplemental claim under Puerto Rico Law No. 100. Remaining, thus, are her claims for damages under Section 1983 against co-defendants Rodriguez, Serrano and Fas (hereinafter collectively referred to as "the Defendants").

In the complaint, Plaintiff alleges that she began to work for the Commonwealth of Puerto Rico on September 1, 1996 at the Internal Revenue Division ("IRD") of the Treasury Department. At all times relevant herein, Plaintiff has held the position of Agent III at the IRD and has been an active member of the New Progressive Party ("NPP"). According to Plaintiff's allegations, her political beliefs were known to all defendants, who - with the exception of Puig - were well-known and active members of the Popular Democratic Party ("PDP"). Plaintiff noted in her complaint that co-defendant Rodriguez is the brother of the President of the PDP for the City of Mayagüez, Mayor Jose Guillermo Rodriguez. See id. at ¶ 36.

Plaintiff contends that Rodriguez told Plaintiff that he would personally see that she be dismissed as an employee of the Treasury Department because of her affiliation to the NPP. See id. at ¶ 37. Cordero maintains that the harassment has been going on for several years on a continuous basis and that it turned intolerable after November 21, 2008, when she received a notice of suspension from work and pay for 30 days, which was signed by Ortiz. According to Plaintiff the reasons for the suspension were merely pretextual, the real reason being her political affiliation. See id. at ¶ 38.

Cordero avers that she has personally informed co-defendants Serrano and Fas of Rodriguez's harassment to no avail because no action was taken to correct the situation. See id. at ¶ 42. Accordingly, Plaintiff claims Serrano and Fas are responsible by omission. See id. at ¶ 44.

Now before the Court are Defendants' motion for summary judgment (Docket No. 45), the Plaintiff's response (Dockets No. 53-54), and the Defendants' reply (Docket No. 62).

CIV. NO. 09-1586 (PG)                                                    Page 3

## II. STANDARD OF REVIEW

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

### III. FINDINGS OF FACT

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address a compliance issue presented to the Court when reviewing Plaintiff's statement of facts. In essence, Plaintiff failed to properly support her opposing statement of material facts with specific record citations, as required by Local Rules 56(c) and 56(e). "The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Investment, LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir.2008). "As a result, when parties ignore this anti-ferret rule, they do so at their peril." Grant v. El Conquistador Partnership L.P., No. 06-1849, 2009 WL 1140261, at *3 (D.P.R. April 27, 2009). Consequently, unless admitted by the opposing party, the Court did not consider the factual statements that were not properly supported by the record submitted.

In addition, the Defendants seek to exclude Plaintiff's statement under penalty of perjury attached as Exhibit 1 in support of her assertions in her own Statement of Uncontested Material Facts (Docket No. 54-1). The Defendants object to the consideration of the statement under penalty of perjury claiming that portions of this statement are self-serving, conclusory and contradict her deposition testimony. See Docket No. 62.

Here, the Plaintiff offered a statement under penalty of perjury in support of her statement of uncontested facts. The same was signed after the Defendants' motion for summary judgment had been filed, which itseld suggests to the Court "that the Statement was made solely to create an issue of fact for the purpose of surviving summary judgment." Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir.2006) (holding district court did not abuse discretion in disregarding affidavit submitted in support of plaintiff's opposition to summary judgment, since statements therein conflicted with answers plaintiff had given in her deposition, and plaintiff failed to provide satisfactory explanation for subsequent change in testimony). Moreover, the Plaintiff fails to explain therein the need to supplement her deposition testimony. Additionally, the Court notes that by submitting this statement, the Plaintiff seeks to embellish the testimony she

CIV. NO. 09-1586 (PG)                                                    Page 5

gave during her deposition as it pertains to some key issues regarding the merits of her claim.[1]

"It is settled that '[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.'" Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 20 (1st Cir.2000) (citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir.1994)). After carefully reviewing the testimony given in Plaintiff's deposition versus the content of her statement under penalty of perjury, the Court will disregard the contents of the latter inasmuch as the Court finds that its timing is suspicious and its content is at times incongruent with her deposition testimony. Thus, any proposed statement of fact supported by this exhibit shall be disregarded.

In accordance with the foregoing discussion, the Court found the following relevant facts were undisputed:

1.  Prior to February 6, 2008, Cordero's job post was at Cervecería India and co-defendant Rodriguez was her supervisor.
2.  The claim of political discrimination that Plaintiff has against Rodriguez is that on many occasions, whenever he was near her, Rodriguez would refer to her in a disparaging and cruel manner about the people that belonged to the NPP. The main incident that occurred resulted from a sworn statement that Cordero rendered against Rodriguez on January 25, 2006.

---

[1] For example, whereas in her deposition testimony Cordero testified that when the N.P.P. won the 2008 elections, co-defendant Orlando Rodriguez said, while standing next to where she was, "that he could give a fuck about the NPP winning, because his brother continued being the mayor, and he was going to continue to do whatever the fuck he wanted," see Docket No. 45-6 at page 66, in her sworn statement, she claims Rodriguez told her "that although the N.P.P. had won the general elections his brother was still the Mayor of Mayagüez and all the personnel with real power within the Treasury Department were his brother's friends *and that he would not rest until I was permanently dismissed from the Treasury Department*," see Docket No. 54-1, Exhibit 1, at ¶ 15 (emphasis ours). In addition, whereas Cordero described Rodriguez's harassment as taking place on "many" or "some" occasions, see Docket No. 54-1, Exhibit 2, pages 63 & 112, she characterized it as "daily" in her sworn statement, see Docket No. 54-1, Exhibit 1, at ¶ 15.

Finally, in her deposition Cordero testified that in May of 2008 she met with co-defendant Serrano in May of 2008 and he told her that he could do nothing with regards to her complaints. See Docket No. 54-1, Exhibit 2, at page 112. However, in her sworn statement, Plaintiff states that on or about the same date, May of 2008, she met with co-defendant Fas, to discuss her claim of political harassment and he told her that co-defendant Rodriguez was the brother of the Mayor of Mayagüez and that this could harm her or help her. See Docket No. 54-1, Exhibit 1, at ¶ 11. This assertion is simply a repetition of an allegation in the complaint, see Docket No. 1 at pages 8-9, ¶ 42, and the Plaintiff fails to offer deposition testimony in support of her assertion that she met with Fas in May of 2008.

CIV. NO. 09-1586 (PG)                                                              Page 6

3.  There were other incidents during the year 2006 that Plaintiff wrote down in a notebook. This journal was for the years 2005, 2006 and the beginning of 2007.
4.  Plaintiff requested an investigation because on February 23, 2007, Rodriguez arrived at the office with his gun and threatened her saying he was going to screw her.
5.  In the year 2007, before the 2008 election, Rodriguez went to Plaintiff's office and stood next to her and said that he could "give a fuck" about the NPP winning, because his brother continued being the mayor, and he was going to continue to do "whatever the fuck" he wanted in the office. Rodriguez made this comment on several occasions out to everyone. Plaintiff often pretty much ignored it.
6.  Plaintiff claims that Rodriguez made this statement when the NPP won the elections in November of 2008.
7.  On December 7, 2007, Plaintiff was informed that she would cover the shift of fellow employee Israel Morales ("Morales") at Cerveceria India.
8.  Plaintiff was assigned to cover Morales' shift from December 11, 2007 until December 31, 2007, while Morales was on vacation.
9.  Plaintiff was assigned to work on Sunday, December 23, 2007, but was absent from work on that day.
10. Plaintiff was also absent on Monday, December 24, 2007. She alleges she was absent on account of illness.
11. Plaintiff had also been absent on Friday, December 21, 2007.
12. Plaintiff charged her absence of Friday, December 21, 2007 to compensatory time.
13. Plaintiff's vacation leave started on January 2, 2008, but claimed that on December 30, 2007 she was on vacation leave.
14. Thereafter, Cordero requested a transfer outside of the supervision of co-defendant Orlando Rodriguez. Co-defendant Fas granted Plaintiff's transfer request and, on February 6, 2008, transferred her to the Bureau of Taxpayer Services.
15. Since February 6, 2008, and as of the date of Plaintiff's deposition on June 15, 2010, Plaintiff's job post has been at the Bureau of Taxpayer Services.
16. Mr. Serrano was Plaintiff's supervisor from February 6, 2008 until December 31, 2008. Mr. Serrano was also Plaintiff's supervisor for the year 2009.

17. Plaintiff's current supervisor is Ivan Ortiz.
18. Once Plaintiff was transferred to the Bureau, on February 6, 2008, co-defendant Rodriguez ceased to be her supervisor.
19. After her transfer, Plaintiff received a letter of intention to suspend her for thirty days due to insubordination because of her absences from work on December 23, 24 and 30, 2007. The letter is dated July 3, 2008 and is signed by co-defendant Fas.
20. After Cordero received this letter, she had a hearing requested by the union on her behalf. Attorney Loira Acosta presided said hearing.
21. After the hearing, Plaintiff was notified on November 21, 2008 of the Treasury Department's Final Decision to suspend her for thirty days due to insubordination.
22. The then Secretary of the Treasury Department, Angel Ortiz Garcia, signed the letter notifying Plaintiff of the final decision to suspend her. Plaintiff signed and dated the second page of the letter when she received it on November 21, 2008.
23. Plaintiff returned to work on January 9, 2009 at the Bureau of Taxpayer Services. By this date, she had been working at the Bureau for around 11 months.
24. The acts of political discrimination Cordero claims were made by Rodriguez, which took place after her transfer to Taxpayer Services on February 6, 2008, are that on some occasions he visited the Bureau of Taxpayer Services and came near her in an intimidating manner and stared at her fixedly. Nothing else happened, Plaintiff walked away from him and she just ignored him.
25. Plaintiff has continued being a member of the NPP, and thus, she has not changed her political affiliation to the Popular Democratic Party.

## IV. DISCUSSION

### A. Section 1983

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982) (internal quotation marks omitted). Plaintiff brings suit for the violation of her constitutional rights under the First Amendment, which "insulates public employees who hold nonpolicymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns."

Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir.2009) (citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 74-76 (1990)). In essence, "[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernandez v. Fortuño-Burset, No. 09-2207, 2011 WL 1228768, at *10 (1st Cir. April 01, 2011) (citing Rutan, 497 U.S. at 75-76; Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir.2008)).

### 1. 30-day Suspension

The Defendants request that Cordero's political discrimination claim as it pertains to her 30-day suspension should be dismissed inasmuch as the decisionmaker of this adverse employment action, namely, Ortiz, is no longer a party to this case, and thus, the required nexus between the adverse employment action and the discriminatory animus is missing. See Docket No. 44. On the other hand, the Plaintiff contends that when she worked at Cerveceria India, co-defendant Rodriguez constantly changed her hours and schedules as part of his political harassment against her. Because Rodriguez would not inform her of these changes, it caused her to be absent from work. See Docket No. 54 at page 8, ¶ 9. Cordero now argues that the allegation of insubordination and the resulting suspension were a subterfuge to discriminate against her because of her political affiliation to the NPP. See Docket No. 53 at page 10.

It is an uncontested fact that Plaintiff was assigned to work from December 11, 2007 until December 31, 2007, but was absent on some days within this period. At the time, her supervisor was co-defendant Rodriguez. On February of 2008, Fas transferred Cordero outside the supervision of co-defendant Rodriguez as per her request. Some months after her transfer, however, Plaintiff received a letter of intention to suspend her for thirty days for insubordination because of her absences from work on December 23, 24 and 30, 2007. The letter is dated July 3, 2008 and is signed by co-defendant Fas. It is undisputed that after Cordero received this letter, a hearing was held as requested by the union on her behalf. After the hearing, on November 21, 2008, Plaintiff was notified of the Treasury Department's Final Decision to suspend her for thirty days for insubordination as a result of the aforementioned absences. The then Secretary of the Treasury Department, Angel Ortiz Garcia, signed the letter notifying Plaintiff of this decision.

CIV. NO. 09-1586 (PG)                                                    Page 9

In a political discrimination claim under Section 1983, the plaintiff must show, or properly plead, that "(1) the plaintiff and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action." Rodriguez-Ramos v. Hernandez-Gregorat, 660 F.Supp.2d 220, 227 (D.P.R. 2009).

In support of the first two elements of the prima facie case, the Plaintiff offers a statement under penalty of perjury, but fails to include these assertions as facts in her own statement of uncontested facts.[2] See Dockets No. 54, 54-1. However, because the Defendants do not contest or deny either that the Defendants and Plaintiff belonged to opposing political affiliation, or their knowledge thereof, the Court will assume that these two elements have been established for the purposes of the discussion herein.

Regarding Cordero's suspension, the Defendants do attack her inability to establish a causal connection between the decisionmakers' alleged discriminatory animus and the adverse employment action. "A plaintiff bringing a political discrimination claim bears the burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that the plaintiff's constitutionally protected conduct was a substantial or motivating factor behind [her] adverse employment action." Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 28 (1st Cir.2008) (internal citations and quotation marks omitted). The First Circuit Court of Appeals has emphasized many times that "it is rare that a 'smoking gun' will be found in a political discrimination case, and thus circumstantial evidence alone may support a finding of political discrimination." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 240 (1st Cir.2010) (citing Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir.1991)). Proving that political affiliation was a substantial or motivating factor "requires more than 'merely juxtaposing a protected characteristic – someone else's politics – with the fact that the plaintiff was treated unfairly.'" Maymi, 515 F.3d at 28 (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir.2006)). "The mere fact that an adverse action was taken after an employee exercises First Amendment rights is not enough to establish

---

[2] In addition, the Court held herein that this statement would be disregarded for the reasons explained *supra*.

CIV. NO. 09-1586 (PG)                                                    Page 10

a prima facie case." Maymi, 515 F.3d at 28 (citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 685 (1996)).

    In the case at hand, the Plaintiff states, without more, that Defendants knew that the reasons given for her suspension were pretextual, the real reason being the political harassment she was being subjected to by co-defendant Rodriguez. See Docket No. 53-1 at page 12. However, she offers only meager evidence to support that contention. To that effect, Plaintiff makes reference to co-defendant Rodriguez's pattern of political harassment by way of discriminatory comments he made to her or in her presence. However, the official communications informing her of the decision to suspend her were signed by both Fas and, eventually, Ortiz, who is no longer a party in this case. With regards to neither of these two has the Plaintiff pointed to direct or circumstantial evidence to support that their decision to suspend her was based on her political affiliation or on any illegal motive other than her unauthorized absences during the period in question.

    In her opposition, the Plaintiff also makes reference to the highly-politically charged atmosphere she suffered in the workplace as circumstantial evidence of the causal connection element of her claim. "Nevertheless, a politically charged atmosphere, without more, provides no basis for a reasonable inference that defendant's employment decisions about plaintiff were tainted by [his] disregard of plaintiff's first amendment rights." Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 24 (1st Cir.2010) (citing LaRou v. Ridlon, 98 F.3d 659, 661-62 (1st Cir.1996)) (internal quotation marks omitted). "Even when it is clear that the defendant has a political agenda or harbors political biases, it remains the plaintiff's burden to produce evidence of a causal connection between those biases and the challenged employment action." Mercado-Berrios, 611 F.3d at 24.

    Plaintiff here has simply not produced such evidence. On the contrary, the Plaintiff's response to the Defendants' motion for summary judgment is mostly filled with caselaw citations, and the factual support actually offered consists of generalities, conclusory assertions, as well as averments of her own suspicions and inferences. "Although we give the nonmoving party the benefit of all reasonable inferences, a party cannot rest on conclusory allegations, improbable inferences, or unsupported speculation to defeat a motion for summary judgment." Welch, 542 F.3d at 934 (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995)) (internal quotation marks omitted).

CIV. NO. 09-1586 (PG)                                                    Page 11

   Therefore, after careful analysis, the Court finds that Cordero has failed to point "to evidence on the record which, if credited, would permit a rational finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." Gonzalez-De-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir.2004) (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir.1996). This failure is insurmountable. As a result of Plaintiff's inability to overcome the hurdle of establishing a prima facie case of discrimination with regards to her 30-day suspension, the motion for summary judgment is **GRANTED** as to this claim.

   **2. Hostile Work Environment**

   In their motion for summary judgment, the Defendants request the dismissal of Plaintiff's claims of political harassment as to co-defendant Rodriguez. The Defendants argue that because Rodriguez ceased being Cordero's supervisor on February 6, 2008, any claim as to him is time-barred inasmuch as the complaint was filed after the one-year statute of limitations had elapsed. In the alternative, the Defendants argue that whatever events transpired between Rodriguez and the Plaintiff are insufficient to ground a claim of hostile work environment based on political harassment. Finally, the Defendants contend that to the extent there is no cognizable claim of political harassment as to Rodriguez, the same should also be dismissed as to supervisors Fas and Serrano. See Docket No. 44.

   In response to the Defendants' arguments, the Plaintiff argues that her claim is timely inasmuch as the continuing violation doctrine applies to her case. According to Cordero, "[d]efendant Rodriguez made constant verbal aggressions of political nature all through 2008 and the first half of 2009, bragging about being the Mayor of Mayaguez's brother … ,"[3] see Docket No. 53-1 at pages 12-130. Plaintiff contends this continuous harassment created a hostile work environment, which turned intolerable after November 21, 2008, when she received a notice of suspension from work and pay for 30 days for what she claims were pretextual reasons. See Docket No. 53-1.

   "A section 1983 action borrows the forum state's statute of limitations for personal injury claims." Lopez-Gonzalez v. Municipality of Comerio, 404 F.3d 548, 551 (1st Cir.2005). In Puerto Rico, the limitations period for

---

[3] As explained *supra*, the portion of this assertion that speaks to Rodriguez's threats of dismissal is disregarded inasmuch as its only basis for support is Plaintiff's statement under penalty of perjury, which is inconsistent with her deposition testimony and is thus disregarded for all purposes herein.

personal injuries is one year, see P.R. LAWS. ANN. tit. 31 § 5298(2), and thus, such is the term that applies. Nevertheless, "[a]lthough the limitations period is determined by state law, the date of accrual is a federal law question." Hernandez-Payero v. Puerto Rico, 493 F.Supp.2d 215, 225 (D.P.R. 2007) (citing Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997)). "Therefore, the one-year statute of limitations for actions brought under section 1983 'begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury'." Davila-Feliciano v. Puerto Rico State Ins. Fund Corp., 754 F.Supp.2d 351, 365 (D.P.R.2010) (quoting González García v. P.R. Elec. Power Auth., 214 F.Supp.2d 194, 200 (D.P.R.2002); Benítez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir.1998)).

Here, the Plaintiff invokes the continuing violation doctrine, which creates an equitable exception to the statute of limitations when unlawful behavior is alleged to be ongoing, thus allowing a plaintiff to prosecute claims that would otherwise be time-barred. See Diaz-Ortiz v. Diaz-Rivera, 611 F.Supp.2d 134, 142 (D.P.R.2009) (internal citations omitted). "The continuing violation exception is an equitable doctrine that applies to hostile work environment claims, which 'do not turn on single acts but on an aggregation of hostile acts extending over a period of time.'" Hernandez-Payero, 493 F.Supp.2d at 223 (citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18 (1st Cir.2002)). In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that a complaint alleging a hostile work environment will not be time-barred if all acts constituting the claim are part of the same unlawful practice and **any act** contributing to that hostile environment falls within the filing period. See Vega v. Hernandez, 381 F.Supp.2d 31, 38 (D.P.R.2005) (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002)) (emphasis ours). See also Ayala-Sepulveda v. Municipality of San German, 727 F.Supp.2d 67, 73 (D.P.R.2010) ("[T]he continuing violation doctrine has been widely applied to § 1983 cases within the First Circuit."). "This doctrine ensures that a plaintiff's claims are not foreclosed merely because the plaintiff needs to see a pattern of repeated acts before he actually realizes that the individual acts were discriminatory." Valentin Rodriguez v. Municipality of Barceloneta, 236 F.Supp.2d 189, 193 (D.P.R.2002) (citing Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir.1999)).

CIV. NO. 09-1586 (PG)                                                    Page 13

Plaintiff complains that after her transfer outside of co-defendant Rodriguez's supervision on February of 2008, he continued to come near her in an intimidating manner and stare at her fixedly. See Findings of Fact No. 24, *supra*. The Plaintiff also asserts, and co-defendant Rodriguez does not properly deny, that after the November 2008 elections he went to Cordero's office, and while standing next to her, said that he could "give a [f--k]" about the NPP winning, because his brother continued being the mayor, and he was going to continue to do "whatever the [f--k]" he wanted in the office. See Findings of Fact No. 5-6, *supra*. These incidents took place within the year prior to the filing of the above-captioned claim on June 26, 2009. Because any act contributing to a hostile work environment claim taking place within the filing period may anchor the entire claim, the Court finds that the Plaintiff's claim for hostile work environment is not time-barred as to co-defendant Rodriguez. Accordingly, we must now determine whether according to the evidence on record, the incidents complained of effectively amount to a hostile work environment.

"Actions of informal harassment … can be the basis for first amendment claims if the motive was political discrimination; but this is so only if the discriminatory acts are 'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" Welch, 542 F.3d at 937 (citing Martinez-Vélez, 506 F.3d at 42 (1st Cir.2007)). "In assessing whether a hostile work environment exists, the Court examines 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Brauchitsch-Monedero v. Puerto Rico Elec. Power Authority, No. 08–1336, 2011 WL 2040249, at 13 (D.P.R. March 16, 2011) (citing Morgan, 536 U.S. at 116). "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir.2005) (citation omitted). The Court must keep in mind in its analysis that "[t]he work place is not a cocoon, and those who labor in it are expected to have reasonably thick skins." Rosario v. Dep't of Army, 607 F.3d 241, 247 (1st Cir.2010) (internal citations and quotation marks omitted). For example, "simple teasing, … offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes

in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations and quotation marks omitted).

It stems from the uncontested facts of the instant case that the Plaintiff claims that co-defendant Rodriguez discriminated against her by harassing her because of her political affiliation since as far back as the year 2005. According to Cordero, Rodriguez would refer to her and the people that belonged to the NPP in a disparaging and cruel manner on many occasions whenever he was near her. At one point, Plaintiff requested an investigation because she claims that on February 23, 2007, Rodriguez arrived at the office with his gun and threatened her saying he was going to screw her. In addition, it is also part of the record that some time in the year 2007, and after the November 2008 elections, Rodriguez went to Plaintiff's office and stood next to her and said that he could "give a [f--k]" about the NPP winning, because his brother continued being the mayor, and he was going to continue to do "whatever the [f--k]" he wanted in the office. After these incidents, Plaintiff requested a transfer outside of Rodriguez's supervision, a request co-defendant Fas granted on February 6, 2008. After her transfer, however, Plaintiff sustains that on some occasions he visited her office and came near her in an intimidating manner and stared at her fixedly.

Even taking into account the totality of the circumstances of Plaintiff's workplace situation in a light most favorable to her, the Court finds that the incidents do not rise to a level of harassment and pervasiveness necessary to sustain a hostile work environment cause of action. First of all, with the exception of the threatening incident on or about February of 2007 and the F-word comment after the November 2008 elections, Plaintiff does not point out when the harassment took place or what was the frequency of the discriminatory conduct. In her deposition testimony, she merely describes the behavior as taking place on "many" or "some" occasions.

Moreover, except for the threatening incident that took place on February of 2007, the alleged conduct was not physically threatening or particularly humiliating or severe so as to alter the conditions of the Plaintiff's employment. In fact, "Plaintiff has not alleged, nor has [she] demonstrated thorough evidence, that [she] was not able to perform the work duties assigned to [her], and as a result has failed to show that the alleged discriminatory conduct 'unreasonably' interfered with [her] work performance." Ayala-Sepulveda v. Municipality of San German, 727 F.Supp.2d 67, 73 (D.P.R. 2010) (internal citations omitted). Quite the contrary, she herself admits to

CIV. NO. 09-1586 (PG)                                                    Page 15

being able to ignore Rodriguez when he made the comments now complained of. As a result, the Court finds that the incidents are not sufficiently severe or pervasive to maintain a hostile work environment claim; and while there are circumstances where one incident may be so severe as to create a hostile work environment, this is not such a case. On the contrary, Rodriguez's comments are more like the offensive utterances the statute is not designed to protect.

Finally, as previously stated, the First Circuit Court of Appeals has recognized that actions of informal political harassment can be the basis for first amendment claims "if the discriminatory acts are 'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" Welch, 542 F.3d at 937 (citing Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 42 (1st Cir.2007)) (finding defendant's alleged harassing comments and "stare downs" did not result in conditions unreasonably inferior work conditions). Here, Cordero has also failed to provide any allegations or evidence that the harassment she faced at the hands of Rodriguez was severe enough to drive her to consider changing her political affiliations or beliefs.

After a careful review of the applicable caselaw, the Court concludes that "the conduct gleaned from [Plaintiff's] evidence is far from that found by other courts to be sufficiently severe and pervasive." Davila-Feliciano, 754 F.Supp.2d at 363 (citing Rosario v. Dep't. of the Army, 607 F.3d 241, 249 (1st Cir.2010); Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19–20 (1st Cir.2002); Rigau v. Pfizer Caribbean Corp., 525 F.Supp.2d 272, 284 (D.P.R.2007)). On the contrary, "more severe conduct than the actions alleged here has been found to not rise to the level of a hostile work environment." Brauchitsch-Monedero v. Puerto Rico Elec. Power Authority, No. 08-1336, 2011 WL 1097760, at *14 (D.P.R. January 21, 2011) (citing Rodriguez-Torres v. Gov't Dev. Bank of P.R., 704 F.Supp.2d 81, 102 (D.P.R. 2010)); see also Marrero v. Schindler Elevator Corp., 494 F.Supp.2d 102, 110 (D.P.R.2007) (finding that calling plaintiff "viejo," "viejito," and "viejo pendejo" constantly or "on a daily basis" was not sufficient to establish hostile work environment claim). Thus, we also find that the Plaintiff is unable to establish a claim of hostile work environment against co-defendant Rodriguez.

With regards to Fas and Serrano, Plaintiff wishes to hang her harassment claims against them "on the supervisory liability peg." Welch, 542 F.3d at 937. However, "under § 1983 there is no *respondeat* superior liability. Supervisory liability can be grounded on either the supervisor's direct

participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Hernandez-Payero, 493 F.Supp.2d at 247 (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir.1999)). The First Circuit Court of Appeals has held that a "supervisor who does not participate in the alleged harassment can be held liable only if (1) the behavior of *his subordinates* results in a constitutional violation and (2) the supervisor's action or inaction … could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence … amounting to deliberate indifference." Welch, 542 F.3d at 937 (internal citations and quotation marks omitted). "Moreover, the indifference required to support supervisory liability under section 1983 must be 'deliberate, reckless or callous.'" Monfort-Rodriguez v. Rey-Hernandez, 599 F.Supp.2d 127, 131 (D.P.R. 2009) (citing Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir.1997)).

As to the first requirement, the Court has concluded *infra* that Rodriguez's conduct did not result in a constitutional violation. "Notably, a 'constitutional violation by a subordinate is a predicate to a supervisor's liability.'" Monfort-Rodriguez, 599 F.Supp.2d at 132 (citing Mendez v. Toledo, 968 F.Supp. 27, 36 (D.P.R.1997)) ("[I]f the subordinate did not violate plaintiff's constitutional rights, the supervisor cannot be held liable.")). And even if it had been considered as such, the Court cannot find that either Serrano or Fas knowingly tolerated the alleged harassment or engaged in "deliberate, reckless or callous" indifference.

"In determining supervisory liability under section 1983 for a constitutional violation, an important factor to consider is whether the official was put on some kind of notice of the alleged violations." Monfort-Rodriguez, 599 F.Supp.2d at 132 (citing Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir.1988)).

> [O]ne cannot make a deliberate or conscious choice … to act or not to act unless confronted with a problem that requires the taking of affirmative steps. Once an official is so notified, either actually or constructively, it is reasonable to infer that the failure to take such steps, as well as the actual taking of them constitutes a choice from among various alternatives. … One obvious alternative is to do something to make the violations stop.

Lipsett, 864 F.2d at 902 (internal citations and quotation marks omitted). There is no evidence on record that Cordero ever complained to Serrano about Rodriguez's alleged harassment, and thus, we must forcibly conclude that he was not placed in a position to act. Moreover, the Court notes that it is

CIV. NO. 09-1586 (PG)                                                  Page 17

unclear whether, by definition, the supervisory liability theory applies to Serrano given the Plaintiff has failed to establish whether or not Serrano was in effect the supervisor of the alleged harasser, namely, Rodriguez. With regards to Fas, on the other hand, it is uncontested that Cordero met with him and requested a transfer outside of the supervision of Rodriguez. As a result, Fas granted Plaintiff's request and, on February 6, 2008, transferred her to the Bureau of Taxpayer Services. Therefore, the Court finds that Fas took affirmative steps once he learned of Cordero's complaints of Rodriguez's harassment towards her, and transferred her. However, Plaintiff has failed to assert that Fas was on notice that the alleged harassment continued *after* the transfer thus allowing it to proceed. Therefore, the Court finds that a reasonable factfinder would not be able to conclude that Fas' conduct constituted encouragement or acquiescence of the alleged harassment, or that Rodriguez's actions were either instigated or tolerated by Fas, or anyone else in authority for that matter.

Pursuant to the foregoing discussion, the Court finds that Plaintiff failed to adduce sufficient evidence in support of her claim to survive summary judgment. As a result, the Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's claim of hostile work environment resulting from her political affiliation.

## V. CONCLUSION

For the reasons stated above, this Court **GRANTS** the Defendants' motion for summary judgment (Docket No. 44), and thus, the Plaintiff's claims pursuant to Section 1983 against the remaining defendants Rodriguez, Fas and Serrano are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, July 21, 2011.

                                              S/ JUAN M. PEREZ-GIMENEZ
                                              JUAN M. PEREZ-GIMENEZ
                                              U.S. DISTRICT JUDGE